# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 97-4347

_____

| | | |
|---|---|---|
| Carl W. Walton, | * | |
| | * | |
| Plaintiff - Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Missouri. |
| McDonnell Douglas Corporation, | * | |
| | * | |
| Defendant - Appellee. | * | |

_____

Submitted: September 25, 1998
Filed: February 1, 1999

_____

Before WOLLMAN, LOKEN, and KELLY,[1] Circuit Judges.

_____

LOKEN, Circuit Judge.

Carl W. Walton commenced this action in July 1996, claiming that McDonnell Douglas Corporation ("MDC") violated the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 et seq. ("ADEA"), and the Missouri Human Rights Act, MO. REV. STAT. §§ 213.010 et seq. ("MHRA"), when it terminated him in April 1995 as part of

_____

[1] Regrettably, the Honorable John D. Kelly passed away on October 21, 1998. This opinion is consistent with his vote at the panel's conference following oral argument on September 25, 1998.

a reduction in force (hereafter referred to as a "RIF").  The district court[2] granted summary judgment in favor of MDC, concluding that Walton failed to establish either the elements of a prima facie case of age discrimination in the context of a RIF, or that MDC's proffered reason for the termination was pretextual.  Walton appeals.  After reviewing the grant of summary judgment *de novo*, viewing the facts in the light most favorable to Walton, the nonmoving party, we affirm.  See <u>Hutson v. McDonnell Douglas Corp.</u>, 63 F.3d 771, 775 (8th Cir. 1995) (standard of review).

Decreased defense spending and increased competition caused MDC to implement large RIFs in the 1990s.  To implement the RIFs, MDC developed a Relative Assessment Scoring procedure under which immediate supervisors were asked to evaluate and rank the relative skills of MDC employees.  See <u>Hutson</u>, 63 F.3d at 774-75.  By grouping employees in related positions and then having supervisors complete Relative Assessment Forms for each employee in a group, upper level management obtained rankings of comparable employees to provide an objective basis for deciding who to lay off in the event of a RIF.  The Relative Assessment Form included a compilation of critical skills for each position and assigned a maximum point value to each skill.

Walton held a number of positions during his thirty-three years with MDC.  His last position was inspection foreman in the Flight Ramp area of the Quality Assurance Division.  In July 1994, MDC conducted a Relative Assessment of employees in the Flight Ramp area.  For this purpose, Walton was grouped with the seven other inspection foremen on the Flight Ramp.  Walton was fifty-four years old at the time.  Three of the other seven were older.  Walton's supervisor, Don Rogers, completed Relative Assessment Forms ranking Walton and three other inspection foremen in over fifty skill categories.  Rogers based the relative skill scores on his experience in

---

[2]The Honorable Donald Stohr, United States District Judge for the Eastern District of Missouri.

supervising the four foremen. Another supervisor ranked the other four inspection foremen in this Flight Ramp group. Walton's overall score placed him sixth of the eight Flight Ramp inspection foremen. Richard Skaggs, the oldest in the group at age 59, received the highest Relative Assessment score.

In early 1995, MDC implemented a RIF affecting the Quality Assurance Division. Two inspection foremen in the Flight Ramp group were laid off. Division management used the 1994 Relative Assessment rankings as the starting point in selecting who to lay off. Robert Baker, the lowest ranked individual, avoided termination by transferring to another position within MDC. One other inspection foreman, Gerald Fulton, ranked lower than Walton, but their respective Relative Assessment scores were so close that MDC treated them as equally qualified and referred to upper management the decision who to lay off. After further evaluation, the Manager of the Quality Assurance Division selected Walton. He did not find another position within the company and was terminated.[3]

To support his ADEA claim,[4] Walton does not dispute that MDC adopted and used a facially objective Relative Assessment Scoring procedure in selecting employees to lay off in the RIF. Nor does Walton complain that upper management discriminated in selecting him rather than Gerald Fulton for layoff. Rather, Walton argues that supervisor Rogers was guilty of intentional age discrimination in his ranking of four inspection foreman in Walton's Relative Assessment group. In opposing MDC's motion for summary judgment, Walton offered the following evidence in support of this

---

[3]In June 1996, MDC rehired Walton for three months during a strike. In September 1997, at age 56, he was hired by a MDC contractor to work at MDC facilities. His $70,000 salary from the contractor and $31,400 pension from MDC provide Walton nearly twice his pre-termination annual compensation.

[4]The MHRA is interpreted to mirror federal law, including the ADEA. See Kneibert v. Thomson Newspapers, Mich. Inc., 129 F.3d 444, 451 (8th Cir. 1997). Thus, our ADEA analysis applies equally to Walton's MHRA claims.

contention: in 1993, inspection foreman Bobby Western, then 50 years old, asked Rogers, then 61 years old, whether Western should accept a transfer out of the Flight Ramp. Rogers responded that there would probably be a RIF in the Flight Ramp and if so, "I have to take care of my kids." Western took the transfer. A few months later, Walton began reporting to Rogers, and Rogers told Walton he intended to "protect" two younger inspection foreman, Kevin Fuhr (then age 34) and Benjamin Wenger (then age 39). In his subsequent Relative Assessment of four Flight Ramp inspection foremen, Rogers gave higher scores to Fuhr and Wenger than to Walton and the fourth inspection foreman, who was then 53 years old. Moreover, Rogers offered Walton no suggestions for improving his assessment scores, nor did Rogers modify his ratings after Walton worked for a month in a special assignment that allowed him to develop additional skills. Finally, at his deposition, Rogers could not identify any specific observations or experiences to justify his comparatively low rating of Walton's skills.

Walton first argues that summary judgment was improper because Rogers's statement that he must "take care of my kids" is direct evidence of unlawful age discrimination that defeats MDC's motion for summary judgment. See Price Waterhouse v. Hopkins, 490 U.S. 228, 270-73 (1989) (O'Connor, J., concurring). We disagree. Direct evidence is "evidence of conduct or statements by persons involved in the decision-making process that may be viewed as directly reflecting the alleged discriminatory attitude . . . sufficient to permit the fact finder to infer that that attitude was more likely than not a motivating factor in the employer's decision." Radabaugh v. Zip Feed Mills, Inc., 997 F.2d 444, 449 (8th Cir. 1993) (quotation omitted). Not all comments that may reflect a discriminatory attitude are sufficiently related to the adverse employment action in question to support such an inference. For example, "'stray remarks in the workplace,' 'statements by nondecisionmakers,' or 'statements by decisionmakers unrelated to the decisional process itself'" will not suffice. Beshears v. Asbill, 930 F.2d 1348, 1354 (8th Cir. 1991), quoting Price Waterhouse, 490 U.S. at 277. Here, Rogers's statement to Western was made two years before Walton was terminated. The reference to Fuhr and Wenger as "kids" is not explicit evidence of age

discrimination, particularly when Rogers himself was over 60 at the time. Rogers never said anything to Walton contemporaneous with either the 1994 Relative Assessment or the 1995 RIF that would suggest Rogers was motivated by age animus in completing the Relative Assessment Forms that were then used by upper management in implementing the RIF. Thus, even if a reference to "kids" might in some other contexts evidence a discriminatory animus, Walton presented no evidence of a "causal link" between this rather innocuous comment and the decisional process leading to Walton's layoff in the subsequent RIF. Philipp v. ANR Freight Sys., Inc., 61 F.3d 669, 673 (8th Cir. 1995); compare Kneibert, 129 F.3d at 452-53, with Hutson, 63 F.3d at 780-81.

Walton next argues that he presented sufficient circumstantial evidence of age discrimination to avoid summary judgment under the more common burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under this analysis, the ADEA plaintiff must establish a prima facie case of age discrimination, the burden then shifts to defendant to articulate a non-discriminatory reason for the adverse employment action, and the plaintiff, to avoid summary judgment, must respond with sufficient evidence that defendant's proffered reason was really a pretext for intentional discrimination. At all times the burden of persuasion remains on the plaintiff. See St. Mary's Honor Center v. Hicks, 509 U.S. 502, 507 (1993). The district court concluded that summary judgment is appropriate because Walton failed to establish either a prima facie case or pretext. We agree.

It is undisputed that Walton was laid off during a bona fide RIF. Therefore, to establish a prima facie case, Walton must show: (1) he was at least forty years old, (2) he met MDC's applicable job expectations, (3) he was laid off despite meeting these job expectations, and (4) "some additional showing" that age discrimination was a factor in his termination. See Holley v. Sanyo Mfg., Inc., 771 F.2d 1161, 1165-66 (8th Cir. 1985). As in most RIF cases, the summary judgment inquiry turns on whether Walton satisfied the fourth element. The requirement of some additional showing, though nebulous, stems from the reality that in a RIF the discharged plaintiff's ability

to do the job is less probative because "*someone has to be let go*." Conkwright v. Westinghouse Elec. Corp., 933 F.2d 231, 235 (4th Cir. 1991). Therefore, because it is virtually certain that *some* younger employees will be retained in the downsizing of a large company like MDC, the some-additional-showing element tailors the prima facie case to ensure that it raises a rational inference of intentional age discrimination. See Bashara v. Black Hills Corp., 26 F.3d 820, 824-25 (8th Cir. 1994).

We agree with the district court that Walton failed to satisfy this fourth element. Again, Walton relies primarily on Rogers's statements that he had to "protect" and "take care of" his "kids." Rogers made no reference to *Walton's* age. See E.W. Blanch Co. v. Enan, 124 F.3d 965, 970 (8th Cir. 1997). And his statements cannot reasonably be understood as derogatory toward older employees generally. On their face, the comments merely express Rogers's desire to retain the two inspection foremen he considered best qualified, employees Rogers accurately described, in terms of his own age, as "kids." We have never regarded a non-derogatory reference such as "kids," made outside the decision-making process at issue, to constitute substantial evidence of age-related animus. See Hill v. St. Louis Univ., 123 F.3d 1114 (8th Cir. 1997) (supervisor's post-decision desire to bring in "fresh blood" does not infer age bias); Buchholz v. Rockwell Int'l Corp., 120 F.3d 146, 150 (8th Cir. 1997) (sixty-two-year-old supervisor referring to recent hires as "young kids" was "an innocuous comment"). Moreover, even if the comments did evidence some bias in favor of younger workers generally, as opposed to two specific young workers that Rogers considered highly qualified, Walton has no evidence, other than his own speculation, that this bias caused Rogers nearly two years later to corrupt MDC's facially objective Relative Assessment procedure by intentionally manipulating his rating and ranking of the four inspection foremen. Thus, Walton failed to satisfy the fourth element of his prima facie case because he "came forward with only 'stray remarks,' most of them outdated and all lacking in apparent probative value." Bright v. Standard Register Co., 66 F.3d 171, 173 (8th Cir. 1995).

We likewise agree with the district court that Walton failed to present sufficient evidence of pretext. Walton argues that Rogers's statements "create a trialworthy issue" of pretext. However, stray remarks of this kind that are remote in time do not support a finding of pretext for intentional age discrimination. See Hutson, 63 F.3d at 779; Price v. Marathon Cheese Corp., 119 F.3d 330, 337 (5th Cir. 1997); Aucutt v. Six Flags Over Mid-America, Inc., 85 F.3d 1311, 1316 (8th Cir. 1996). Walton further argues that his comparatively low Relative Assessment scores are evidence of pretext because Rogers, in his deposition, was unable to substantiate his ratings with specific facts and circumstances. However, "the presence of subjectivity in employee evaluations is itself not a grounds for challenging those evaluations as discriminatory." Hutson, 63 F.3d at 780; see also Miller v. Citizens Sec. Group, Inc., 116 F.3d 343, 347 (8th Cir. 1997). Walton argues the jury might disbelieve Rogers's unsubstantiated testimony and conclude he is hiding the true basis of his ratings, age discrimination. But to defeat summary judgment, Walton "must present affirmative evidence," not simply contend that a jury might disbelieve MDC's evidence. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986). Here, Walton has come forward with no affirmative evidence that Rogers manipulated or corrupted MDC's facially neutral Relative Assessment procedure in completing detailed Relative Assessment Forms for the four inspection foremen. Thus, the district court properly granted summary judgment on the issue of pretext.

The judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.