**Dennis Earl KESLER, Plaintiff,**

**v.**

**BASF CORPORATION, Defendant.**

**No. CIV.4:01-CV-30463.**

United States District Court,
S.D. Iowa,
Central Division.

Dec. 10, 2002.

---

Roger J. Hudson, Smith Schneider Stiles Hudson Serangeli Mallaney & Shindler PC, Des Moines, IA, for Plaintiff.

Barbara A. Hering, Hugh J. Cain, Hopkins & Huebner, Des Moines, IA, for Defendant.

RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

WALTERS, Chief United States Magistrate Judge.

This matter is before the Court on defendant's motion for summary judgment (# 16). On July 9, 2001, plaintiff brought this action in the Iowa District Court for Polk County, alleging defendant discharged him because of his age in violation of the Iowa Civil Rights Act, Iowa Code Ch. 216 (2001). Plaintiff seeks compensatory damages and other relief. Defendant removed this action to federal court on July 31, 2001, on the basis of diversity jurisdiction. 28 U.S.C. §§ 1332(a), 1441(a). The parties consented to proceed before a United States Magistrate Judge and the case was referred to the undersigned for all further proceedings on October 3, 2001. *See* 28 U.S.C. § 636(c).

I.

Defendant is entitled to summary judgment if the affidavits, pleadings, and discovery materials "show that there is no genuine issue as to any material fact and that [movant] is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

> Although we view the facts in a light most favorable to the non-moving party, in order to defeat a motion for summary judgment, the non-moving party cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit.

*Carter v. St. Louis University,* 167 F.3d 398, 400 (8th Cir.1999). An issue of material fact is genuine if it has a real basis in the record. *Hartnagel v. Norman,* 953 F.2d 394, 395 (8th Cir.1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). A genuine issue of fact is material if it "might affect the outcome of the suit under governing law." *Hartnagel,* 953 F.2d at 395 (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)); *see Rouse v. Benson,* 193 F.3d 936, 939 (8th Cir.1999).

In assessing a motion for summary judgment a court must determine whether a fair-minded trier of fact could reasonably find for the nonmoving party based on the evidence presented. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *Herring v. Canada Life Assurance Co.,* 207 F.3d 1026, 1030 (8th Cir.2000). The court must view the facts in the light most favorable to the nonmoving party, and give that party the benefit of all reasonable inferences which can be drawn from them, "that is, those inferences which may be drawn without resorting to speculation." *Mathes v. Furniture Brands Int'l, Inc.,* 266 F.3d 884, 885 (8th Cir.2001) (citing *Sprenger v. Federal*

*Home Loan Bank of Des Moines,* 253 F.3d 1106, 1110 (8th Cir.2001)); *see Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348; *Lambert v. City of Dumas,* 187 F.3d 931, 934 (8th Cir.1999); *Kopp v. Samaritan Health System, Inc.,* 13 F.3d 264, 269 (8th Cir.1993). "[M]ere allegations which are not supported with specific facts are not enough to withstand [a motion for summary judgment]." *Klein v. McGowan,* 198 F.3d 705, 709 (8th Cir.1999); *see Bennett v. Dr. Pepper/Seven Up, Inc.,* 295 F.3d 805, 808 (8th Cir.2002) (court has no obligation to search record for issues of fact where responding party has failed to bring same to the court's attention).

The Eighth Circuit has observed that motions for summary judgment in employment cases should be approached with caution because such cases "often depend on inferences rather than on direct evidence." *Jacob–Mua v. Veneman,* 289 F.3d 517, 520 (8th Cir.2002); *Bradley v. Widnall,* 232 F.3d 626, 630–31 (8th Cir.2000); *Kells v. Sinclair Buick–GMC Truck, Inc.,* 210 F.3d 827, 830 (8th Cir.2000) (employment actions " 'are inherently fact based' "); *Crawford v. Runyon,* 37 F.3d 1338, 1341 (8th Cir.1994) (citing *Johnson v. Minnesota Historical Soc'y,* 931 F.2d 1239, 1244 (8th Cir.1991)). *See also Webb v. St. Louis Post–Dispatch,* 51 F.3d 147, 148 (8th Cir. 1995); *Hardin v. Hussmann Corp.,* 45 F.3d 262, 264 (8th Cir.1995); *Kunzman v. Enron Corp.,* 902 F.Supp. 882, 892 (N.D.Iowa 1995). Still, summary judgment "remains a useful pretrial tool to determine whether or not any case, including one alleging discrimination, merits a trial." *Berg v. Norand Corp.,* 169 F.3d 1140, 1144 (8th Cir.), *cert. denied,* 528 U.S. 872, 120 S.Ct. 174, 145 L.Ed.2d 147 (1999); *see Snow v. Ridgeview Medical Ctr.,* 128 F.3d 1201, 1205 (8th Cir.1997) ("summary judgment is proper when a plaintiff fails to establish a factual dispute on an essential element of her case").

II.

The material underlying facts are undisputed.[1] Plaintiff Dennis Kesler was born in 1951. He was offered a job as a field sales representative for BASF on December 18, 1992 and began in early 1993.

In the mid 1990's revolutionary changes occurred in the agricultural chemical market served by BASF. BASF patents expired. Competition increased and focused on cost. The development of "Round–Up–Ready" soybeans by a BASF competitor had a substantial impact on BASF sales. BASF soybean chemicals were more expensive. BASF expanded its product base. In 1997 BASF purchased Sandoz in order to obtain a full line of herbicides, including corn herbicides.

In his early years soybean chemicals were the BASF product sold by Kesler. Kesler received periodic performance reviews. His performance was acceptable, "Good/Approaches Good" in 1998. His sales were a little below average in his later years. Kesler was well respected by peers and customers and his managers had no difficulties with him.

Due to the economic challenges previously discussed, in August 1998 BASF restructured and merged three of its U.S. business areas into two and terminated nineteen field sales workers. In July 1999 BASF again reevaluated its businesses and decided to make additional changes. In August 1999, BASF restructured its North American business units into one and re-

1. Plaintiff has not responded to defendant's Statement of Undisputed Facts in Support of Motion for Summary. Accordingly, plaintiff is deemed to have admitted the facts in defendant's statement. LR 56.1(b). Plaintiff has filed his own Statement of Facts in Resistance to Motion for Summary Judgment. Defendant has responded to plaintiff's Statement admitting most of the facts alleged.

duced total personnel by approximately one hundred, of which approximately fifty-five were field sales representatives. BASF also restructured its business model. It decided to focus on larger customers and on longer term, multi-year arrangements. Fewer efforts were focused on yearly, short-term sales to any and all customers.

BASF developed a selection process to determine which field sales representatives would be retained and which would be let go. Managers were to rate each representative according to three criteria: competency, overall performance, and seniority. BASF weighted competency 80%, performance 10% and seniority 10%. The performance ratings were on the basis of the representatives' 1998 and 1997 evaluations. Competency was based on the assessment of a number of specific considerations leading to a numerical score of from 5 (among the best) to 1 (unacceptable). (Pltf.App. at 79–80). Since the sales representatives were not all rated by the same manager, BASF attempted to normalize the scores by determining the average competency score for each supervisor and subtracting that score from the competency score given to each representative to yield a standardized score.

Kesler was one of seventeen field sales representatives in Iowa. All seventeen were rated by one of the two managers with responsibility for Iowa representatives. The ranking of the Iowa field sales representatives is set forth in defendant's appendix at 62, 71. Ten Iowa representatives, including Kesler, were terminated as a result of the reorganization. Nine, including Kesler (Johnson, Saathoff, Jones, Saeugling, Kesler, Grosskruger, Bassett, Berhens and Dater), had standardized ratings lower than the retained representatives. BASF decided to terminate Winter, age 37, rather than Holm, age 39, even though Winter's standardized score (7th of 17) was slightly higher than Holm's (8th of 17)because Winter was located in the same area of Iowa as two other representatives who were retained, and Holm was rated much higher than Winter in competency.

Kesler was terminated on August 16, 1999. He was 47 years of age. He was paid through August 31, 1999. At that time his supervisor was Greg Reigh, who had been at BASF since January 1, 1999. Reigh had not done a regular performance evaluation of Kesler prior to Kesler's termination.

III.

Kesler brings his action under the Iowa Civil Rights Act (ICRA). In general Iowa courts analyze ICRA age discrimination cases under the same framework as federal courts analyze cases arising under the Age Discrimination in Employment Act (ADEA). *Bialas v. Greyhound,* 59 F.3d 759, 762–63 (8th Cir.1995); *Landals v. George A. Rolfes Co.,* 454 N.W.2d 891, 893–94 (Iowa 1990).

Both the *McDonnell Douglas/Burdine* and *Price Waterhouse* theories of burden-shifting have been applied in ADEA cases. *Reynolds v. Land O'Lakes, Inc.,* 112 F.3d 358, 361 (8th Cir.1997) (pretext case); *Nitschke v. McDonnell Douglas Corp.,* 68 F.3d 249, 253 (8th Cir.1995) (plaintiff did not meet burden in order to rely on mixed-motives analysis). This case involves a company-wide reduction in BASF's sales staff for economic reasons that are not questioned. The elements of a *prima facie* ADEA case where there has been a reduction-in-force are analyzed under a more exacting standard than a termination case in which plaintiff is replaced by a younger worker. *See Fast v. Southern Union Co., Inc.,* 149 F.3d 885, 890 (8th Cir.1998). Plaintiff must show "(1) he is age forty or older;[2] (2) he met the applica-

2. Iowa's age discrimination law is "age-neutral" in that it "prohibits discrimination in

ble job qualifications; (3) he was discharged; and (4) age was a factor in the employer's decision to terminate him." *Yates v. Rexton, Inc.*, 267 F.3d 793, 799 (8th Cir.2001); *Taylor v. QHG of Springdale, Inc.*, 218 F.3d 898, 900 (8th Cir.2000); *Reynolds*, 112 F.3d at 361 (citing *Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 776 (8th Cir.1995)). The fourth element in a reduction-in-force case is sometimes referred to as a requirement that plaintiff "produce some additional evidence to demonstrate age was a factor in [the] termination." *Taylor*, 218 F.3d at 900; *see Reynolds*, 112 F.3d at 361.

Once the *prima facie* case has been made, "the burden of production shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions." *Taylor*, 218 F.3d at 900; *Miners v. Cargill Communications, Inc.*, 113 F.3d 820, 823 (8th Cir.), *cert. denied*, 522 U.S. 981, 118 S.Ct. 441, 139 L.Ed.2d 378 (1997) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). If the employer does this, plaintiff "may then attempt to discredit the reason given as merely a pretext for discrimination but the ultimate burden of proving unlawful discrimination remains with" him. *Taylor*, 218 F.3d at 900 (citing *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)).

BASF's motion challenges the fourth element in Kesler's prima facie case and, alternatively, his evidence of pretext. In resistance, Kesler argues the fourth element of the prima facie case is satisfied by evidence he was replaced by a younger worker, and the affidavits of three other terminated sales representatives expressing their opinion he was terminated because of his age. (Pltf.App. at 84–86). As evidence of pretext Kesler relies on the facts that most Iowa representatives over 40 were let go in the reduction-in-force and the rating formula gave comparatively little weight to the more objective factors of performance and seniority in preference for a subjective assessment of competency. In the Court's judgment, this evidence is not sufficient to establish either a prima facie case or pretext.

*Prima Facie Case.*

Kesler does not identify a specific employee he claims was assigned his sales responsibilities. At hearing BASF stated the job responsibilities of the terminated employees were redistributed generally among those who remained. Only one of the remaining seven employees was older than Kesler, hence it may well have been the case that his job duties were assigned, for the most part, to persons younger than he. It is difficult to tell from the summary judgment record precisely what became of Kesler's job responsibilities, but their redistribution to younger employees does not, in a reduction-in-force case, suffice to create an inference of age discrimination, hence the necessity for "additional evidence." The Eighth Circuit has explained:

> Ordinarily, replacement by a younger worker is sufficient to establish a prima facie case. However, in recognition that duties have to be redistributed within the employer's remaining workforce after a reduction-in-force, redistribution to a younger person is not circumstantial evidence of discrimination. Instead, in meeting his burden under the fourth factor, [plaintiff] must come forward

employment 'because of age'" with certain exceptions not relevant in this case. *Kunzman v. Enron Corp.*, 902 F.Supp. 882, 902 (N.D.Iowa 1995); *compare* Iowa Code § 216.6(a) *with* 29 U.S.C. § 623(a)(1), 631(a). The first element of an ADEA prima facie case is thus not required by ICRA, but this difference is not important here as Kesler was over 40.

with some additional evidence that age played a role in his termination.

*Yates,* 267 F.3d at 799; *see also Walton v. McDonnell Douglas Corp.,* 167 F.3d 423, 427 (8th Cir.1999).

The affidavits of the three terminated sales representatives do not furnish the requisite additional evidence that age was a factor in Kesler's termination. They all give the author's conclusory opinion that Kesler was the victim of age discrimination, but put forward no supporting facts other than the statement in one affidavit that Kesler was replaced by an unidentified, younger employee and, in the unsworn statement of another, that Kesler did a good job. (Pltf.App. at 84–86). Opinions of this type about an employer's motivation do not substitute for evidence. *Stanback v. Best Diversified Products,* 180 F.3d 903, 909 (8th Cir.1999) (general statements in affidavits are insufficient to overcome summary judgment); *Berg v. Bruce,* 112 F.3d 322, 327–28 (8th Cir.1997) (general statements in affidavits about alleged age discrimination were insufficient).

*Pretext.*

Assuming plaintiff did cross the prima facie case threshold, he must identify evidence that the legitimate non-discriminatory reason provided by BASF to explain his termination—the reduction-in-force—was not the real reason, but a pretext for age discrimination. Kesler first points to a statistic. He notes that of the seven retained sales representatives, "only one was over the age of 40 and of the ten that were let go, most were above the age of forty." (Pltf. Brief at 3). The record reflects that of the seven employees retained, two were over age 40 (Weaver 43 and Kayser 49) and of the ten terminated, six were above age 40 (Def.App. at 61, 71). There is no indication that this breakdown is statistically significant in light of the size of the group. In fact, if the oldest representative (age 57, who could not have hoped to have been retained with a standardized score last of the seventeen representatives and a performance score not only last but one-sixth of the next lowest score) is disregarded, the average age of the Iowa sales representatives before and after the reduction-in-force made only a small drop from about 38 to 36 years. The numbers do not present a clear picture and, it follows, do not speak to motive in this case. Numbers alone rarely do. Our court of appeals has recently observed that raw, generic employment statistics are not probative of the reason for a termination and, as a result, rarely are alone sufficient to rebut an employer's legitimate, non-discriminatory reason for an employment decision. *See Edmund v. MidAmerican Energy Co.,* 299 F.3d 679, 685 (8th Cir. 2002); *Bogren v. Minnesota,* 236 F.3d 399, 406 (8th Cir.2000), *cert. denied,* 534 U.S. 816, 122 S.Ct. 44, 151 L.Ed.2d 16 (2001) (citing *Bullington v. United Air Lines, Inc.,* 186 F.3d 1301, 1319 (10th Cir.1999)).

Kesler next complains that Greg Reigh, the supervisor who completed his evaluation for purposes of the reduction-in-force, had not worked with him very long, had never evaluated Kesler in the nine months Kesler worked under him in 1999, and lacked relevant product knowledge. These facts are not disputed, but neither is Reigh's testimony that in preparing the competency portions of the evaluations he talked to other supervisors who had experience with Kesler, including Kesler's most recent past supervisor. (Pltf.App. at 22–24). Nor does Kesler dispute that the 1997 and 1998 evaluations were used for the evaluations, not 1999. But even if Reigh's lack of supervisory experience with Kesler made him an unsuitable evaluator, that is not evidence of an age-based animus on Reigh's part or that age played a part in his evaluations.

Finally, Kesler challenges the evaluation method by which BASF undertook to reduce its workforce, which gave performance[3] and seniority only 10% weight each in the overall evaluation. Kesler argues these were fairer and, in the case of performance, more reliable measures of the value of his services to the company. Yet eighty percent of the evaluation was based on supervisors' assessment of each representative's "competency." Though BASF laid out specific criteria to guide supervisors, the competency assessment was a subjective judgment.

" '[T]he presence of subjectivity in employee evaluations is itself not a grounds for challenging those evaluations as discriminatory.' " *Evers v. Alliant Techsystems, Inc.,* 241 F.3d 948, 959 (8th Cir. 2001), and *Walton,* 167 F.3d at 428 (both quoting *Hutson,* 63 F.3d at 780). There is no affirmative evidence that Reigh manipulated the ratings or otherwise failed to follow BASF's procedure in the evaluations he undertook. *Evers,* 241 F.3d at 958 (no affirmative evidence supervisor manipulated rating system). The fact that BASF chose to give lesser weight to performance and seniority in its evaluation process also does not raise an inference of age discrimination. "[F]ederal courts 'do not sit as superpersonnel departments reviewing the wisdom or fairness of the business judgments made by employers,' " except to the extent that those "judgments involve intentional discrimination." *McCullough v. Real Foods, Inc.,* 140 F.3d 1123, 1129 (8th Cir.1998) (quoting *Hutson,* 63 F.3d at 781); *Duffy v. Wolle,* 123 F.3d 1026, 1037 (8th Cir.1997), *cert. denied,* 523 U.S. 1137, 118 S.Ct. 1839, 140 L.Ed.2d 1090 (1998); *Chock v. Northwest Airlines, Inc.,* 113 F.3d 861, 864 (8th Cir.1997).

A close look at Kesler's position relative to the other representatives shows that an emphasis on performance and/or seniority would not have placed him among the seven representatives who were retained. Eight of the representatives had more seniority than he. Five representatives had better performance scores, only one was worse. He was tied with ten others. If the performance and seniority scores reflected in the exhibits are combined, nine representatives ranked ahead of Kesler. Nine representatives also ranked ahead of Kesler in the competency assessment. The record appears to demonstrate that eliminating or reducing the weight given the competency assessment would not have had much effect on Kesler's position in the pecking order of those facing termination. (*See* Def.App. at 62, 71).

IV.

At hearing and in response to the Court's questions counsel was candid in stating that the only evidence of age animus in this case was the end result of the reduction-in-force. However, the result is not sufficient to supply the required additional evidence that age was a factor in a termination decision made as a part of a reduction-in-force.

Defendant has shown that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. The motion for summary judgment is

3. The performance rating appears to have been based on the 1997 and 1998 "PDR" or "Performance and Development Review," the name used for BASF's annual evaluation. (*See* Def.App. at 60). The PDR was based on both sales performance and an "overall performance rating." The latter incorporated subjective judgments of such things as "enthusiasm" and "personal resolve." (*Id.* at 43–54). The performance rating, therefore, was historical and partly objective. Kesler does not complain about the fairness or accuracy of the PDR's used to rate his performance.

granted and the Clerk shall enter judgment dismissing the complaint.

IT IS SO ORDERED.