# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-3035

_____

Ann Hilt,                                                   *
                                                            *
              Appellant,                                    *
                                                            *   Appeal from the United States
      v.                                                    *   District Court for the
                                                            *   District of Minnesota.
St. Jude Medical S.C., Inc.,                                *
                                                            *
              Appellee                                      *

_____

Submitted: May 16, 2012
Filed: August 1, 2012

_____

Before WOLLMAN, BEAM, and LOKEN, Circuit Judges.

_____

BEAM, Circuit Judge.

      In this diversity action involving Minnesota's Whistleblower Act, Minn. Stat. § 181.932, Ann Hilt appeals the district court's[1] grant of summary judgment in favor of her employer, St. Jude Medical S.C., Inc. Because Hilt has failed to create a genuine issue of material fact, we affirm.

_____

      [1]The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota.

## I.    BACKGROUND

In April 2003, Hilt began working for St. Jude as a Corporate Accounts Director (CAD) in a regional office based in Chicago.  As a CAD, Hilt oversaw development of sales strategies, sales practices, and pricing within the region. During the six years Hilt held the position, she reported to a variety of supervisors.  In 2006 and 2008, Hilt was evaluated by different supervisors and each rated Hilt as a 3 out of 5 ("meets expectations") on her annual performance appraisal.  Her 2006 appraisal highlighted areas for improvement, namely, communication skills, in which she received a rating of 2 out of 5 ("below expectations").  However, her communication skills rating increased in 2008 to "meets expectations."  There is no indication that Hilt was ever disciplined or formally reprimanded during this period.

While serving as a CAD, Hilt made multiple reports to management, including Vice President of Corporate Accounts, David Hendrick, regarding St. Jude's conduct at various hospitals.  These reports centered on Hilt's belief that St. Jude violated anti-kickback laws by leaving equipment, software, or the like, in hospitals when these materials should have been removed.

In January 2009, Hendrick promoted Hilt to Director of National Accounts. This position remained in the Corporate Accounts Group, but now Hilt became responsible for contracting and sales strategies on St. Jude's national accounts, constituting over $1 billion in business.

After her promotion, Hilt discovered that a piece of equipment remained at a hospital, and according to Hilt, she notified Hendrick that this was illegal.  In addition, while a Director of National Accounts, Hilt cooperated with a federal investigation into St. Jude.  Every employee in the Corporate Accounts Group received an email from an attorney representing St. Jude, inquiring as to whether the employees knew of circumstances related to certain contracting practices.  Hilt

responded that she had knowledge of the circumstances and subsequently cooperated further with the investigation. According to Hendrick, he knew Hilt had received the initial email inquiry but did not know of her ongoing cooperation with the investigation. Hilt offers a contrary account and alleges that, by mid-July 2009, she informed Hendrick she was involved in the investigation.

Hilt and Hendrick likewise have different recollections concerning Hilt's performance as Director of National Accounts. As Hilt recalls, Hendrick said her performance was "very good," and she never received any indication that her performance needed improvement. Hendrick, however, highlights that Hilt had various performance issues, which Hilt's co-workers brought to his attention. Hilt claims that if performance issues existed, no one communicated them to her. Hendrick never documented any of these issues, finding them relatively minor matters.

Nevertheless, Hendrick recounts one incident where Hilt's interaction with a customer was "terribly unprofessional." As a result of this incident, Hendrick testified that he warned Hilt to avoid such unprofessional conduct in the future but did not pursue any formal disciplinary action with human resources. Again, Hilt characterizes this incident differently, noting, "Mr. Hendrick simply advised me of a change he wanted to see for answering requests for information. He never told me that I was unprofessional . . . or inappropriately answered the request." According to his affidavit, although Hendrick had concerns about Hilt's performance, he generally viewed her as a competent employee, and had no intention of terminating her.

In July 2009, Hendrick's supervisors advised him that St. Jude was undergoing a 10% reduction in force (RIF), and he had to identify three individuals from the 33-person Corporate Accounts Group for inclusion in the RIF. Hendrick then engaged in an evaluating and ranking process to determine which individuals to include in the

RIF. As part of the process, Hendrick considered the employees' 2008 appraisals, rankings by two senior directors who reported to him and supervised some Corporate Account employees (but not Hilt), and his personal observations of the employees' performance and achievement. Hilt and six other employees received a "3" on their 2008 appraisal, the lowest in the group. Hendrick testified that, even though they did not directly supervise Hilt, the two senior directors generally gave unfavorable feedback about Hilt's performance. Additionally, Hendrick specifically compared Hilt's performance to Ron Carlucci, a similarly situated Director of National Accounts, and determined that Carlucci's performance was superior to Hilt's in several categories.

After evaluating these factors, Hendrick ranked Hilt in the bottom five of his thirty-three employees. From the five lowest ranked employees, Hendrick selected the bottom two employees, along with Hilt, for inclusion in the RIF. Although Hilt ranked at the top of the bottom five employees, and thus two employees ranked directly below her, Hendrick decided to keep the two lower-ranked employees, because they were new and had potential for greater contributions than Hilt. St. Jude eventually terminated Hilt in August 2009, eight months after she became a Director of National Accounts.

Hilt commenced this action against St. Jude, asserting claims under Minnesota's Whistleblower Act. Hilt alleged that St. Jude decided to terminate her based, in part, on her reports concerning St. Jude's illegal conduct, and her participation in a government investigation. St. Jude moved for summary judgment. In evaluating the merits of her claim, the district court focused on whether Hilt had sufficiently established that St. Jude's proffered reason for termination was pretextual under the McDonnell Douglas[2] burden-shifting framework. Ultimately, the district

---

[2]McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

court concluded that Hilt did not generate an issue of fact as to pretext and thus granted St. Jude's motion. Hilt now appeals.

## II. DISCUSSION

Pursuant to Minnesota's Whistleblower Act, an employer shall not retaliate against an employee who "in good faith, reports a violation or suspected violation of any federal or state law. . . to an employer or to any governmental body." Minn. Stat. § 181.932, subd. 1(1). Similarly, an employer shall not retaliate against an employee who "is requested by a public body . . . to participate in an investigation." Id. subd. 1(2). Using these statutory mandates, we must determine whether the district court properly granted St. Jude's motion for summary judgment.

We review de novo the district court's grant of summary judgment and its interpretation of state law. Best Buy Stores, L.P. v. Benderson-Wainberg Assocs., L.P., 668 F.3d 1019, 1026 (8th Cir. 2012). Like the district court, we view the record and all factual disputes in the light most favorable to Hilt. Zike v. Advance Am., Cash Advance Ctrs. of Mo., 646 F.3d 504, 509 (8th Cir. 2011). Ultimately, summary judgment is proper if the record fails to reveal a genuine issue of material fact, and St. Jude is entitled to judgment as a matter of law. Clark v. Matthews Int'l Corp., 639 F.3d 391, 397 (8th Cir. 2011). But factual disputes alone will not preclude summary judgment; "[i]nstead, the dispute must be outcome determinative under prevailing law." State Auto. Ins. Co. v. Lawrence, 358 F.3d 982, 985 (8th Cir. 2004) (internal quotation omitted).

To resolve a controversy premised on Minnesota's Whistleblower Act, Minnesota courts apply the McDonnell Douglas burden-shifting framework. Cokley v. City of Otsego, 623 N.W.2d 625, 630 (Minn. Ct. App. 2001). Under this framework, the plaintiff has the initial burden of presenting a prima facie case, which entails "(1) conduct by the employee that is protected by the [Whistleblower] Act, (2)

an adverse employment action directed at the employee, and (3) a causal connection between the protected conduct and the adverse action." Buytendorp v. Extendicare Health Servs., Inc., 498 F.3d 826, 834 (8th Cir. 2007). If the plaintiff establishes a prima facie case, the employer then has the burden to "articulate a legitimate reason for the adverse action." Id. Once the employer has articulated a legitimate reason, the plaintiff shoulders the ultimate burden of establishing a whistleblower violation by demonstrating that the employer's "reason is merely a pretext and that retaliatory animus motivated the adverse action." Id. As the district court resolved this action by analyzing the final step of the McDonnell Douglas framework, we move directly to the dispositive issue: whether Hilt presented sufficient evidence to demonstrate that St. Jude's proffered reasons for including her in the RIF was pretext for a retaliatory motive.[3] See Alvarez v. Des Moines Bolt Supply, Inc., 626 F.3d 410, 416 (8th Cir. 2010), cert. denied, 131 S. Ct. 2962 (2011).

Hilt's first argument rests on the temporal proximity between her whistleblowing activities and her termination. Specifically, Hilt asserts that she made multiple reports of illegality, and St. Jude terminated her only one month after she informed Hendrick that she was participating in the government's investigation. Thus, in Hilt's view, this close temporal relationship "serves as strong circumstantial evidence of retaliation."

We disagree. Although our cases tend to paint a "complicated picture" on the issue of timing with respect to a prima facie case, Green v. Franklin Nat'l Bank of Minneapolis, 459 F.3d 903, 915, 916 (8th Cir. 2006), "timing alone is usually insufficient to establish that the employer's legitimate non-discriminatory reason for discharge is pretext." EEOC v. Kohler Co., 335 F.3d 766, 773 n.7 (8th Cir. 2003);

---

[3]Because Hilt does not challenge the RIF per se, we only consider whether an issue of fact exists as to her inclusion in the RIF. Cf. Regal v. K-Mart Corp., 190 F.3d 876, 879 (8th Cir. 1999) ("The appellants challenge [the employer's] stated reason for their discharges by arguing that there was no need for a RIF.").

see also Hubbard v. United Press Int'l, Inc., 330 N.W.2d 428, 445-46 (Minn. 1983) ("Although the timing of the discharge in this action does raise an inference of retaliatory motive that is sufficient to satisfy the causation element of [plaintiff's] prima facie case, . . . it does not operate to satisfy [plaintiff's] ultimate burden of persuasion."). Here, even if Hilt had established the causation element of her prima facie case by showing she made multiple reports and Hendrick terminated her one month after she informed him of the investigation, this alone is insufficient to show pretext and a retaliatory motive under the final step of the McDonnell Douglas framework. See Kohler Co., 335 F.3d at 773 n.7.

In addition to evidence of close temporal proximity, Hilt claims she has presented evidence showing St. Jude proffered a false reason for including her in the RIF. See Hoover v. Norwest Private Mortg. Banking, 632 N.W.2d 534, 545 (Minn. 2001) ("'In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is cover[ing] up a discriminatory purpose.'") (alteration in original) (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147 (2000)). Specifically, Hilt emphasizes that (1) Hendrick "hand-picked" her for a promotion to Director of National Accounts only eight months before her termination; (2) her performance reviews were "average" when based on subjective criteria but "above average" when based on objective criteria, and (3) the record lacks documentation concerning Hilt's performance issues. According to Hilt, this evidence establishes that she was not among the worst employees in the 33-employee Corporate Accounts Group.

In Hutson v. McDonnell Douglas Corp., 63 F.3d 771, 779, 780 (8th Cir. 1995), we entertained an argument similar to Hilt's and observed that, in a RIF case, positive performance evidence is not particularly probative unless "it casts doubt on the low relative assessment" in the RIF ranking. But even then, such evidence is only probative when past evaluations conflict with the low RIF assessment. Id. at 780. Here, we perceive no inconsistency between Hilt's past evaluations and her RIF

ranking. To be sure, Hilt's 2006 and 2008 appraisals are far from a glowing review of Hilt's job performance. In fact, the undisputed evidence shows that in her 2008 appraisal, Hilt was among seven individuals who received a "3"–the lowest score given to any Corporate Accounts employee.[4]

And, while Hilt's promotion is relevant, it must be viewed in light of the entire record. Guimaraes v. SuperValu, Inc., 674 F.3d 962, 975 (8th Cir. 2012). In this regard, Hilt fails to acknowledge evidence concerning post-promotion activities. After her promotion, Hendrick recounted an incident in which Hilt exhibited "terribly unprofessional" conduct in dealing with a customer. Although we accept Hilt's disputed version of this incident, even she admits that Hendrick had to inform her that she needed to change the way she responded to clients' requests. Additionally, Hendrick compared Hilt's post-promotion performance to Carlucci's–the only other Director of National Accounts–and found Carlucci superior in several aspects, including communicating, strategizing and collaborating. Hilt did not present any evidence disputing her comparison to Carlucci. Therefore, we find that Hilt's general performance evidence fails to cast doubt on her low RIF ranking. See Hutson, 63 F.3d at 780.

Because general performance evidence is not particularly probative in this RIF case, id. at 779, the district court examined whether the record contained comparative performance evidence. Hilt claims this comparative performance analysis was flawed. We disagree. St. Jude explained that the reason for terminating Hilt was because she ranked in the bottom five of the Corporate Accounts Group. Given this articulated reason, Hilt's relative competency became a pivotal issue. See id. at 779-80 (observing the distinction between an employee terminated for incompetence and

---

[4]Hilt notes in passing that because more than one person conducted the 2008 appraisals, the scores are inconsistent. Hilt cites no authority for this proposition, and we have located no case law that suggests employee evaluations are inherently suspect because more than one reviewer conducted the evaluations.

an employee terminated for less competence than other employees under a RIF). Indeed, in this type of RIF case, we think comparative performance evidence is probative in examining the legitimacy of Hilt's ranking.

Next, Hilt challenges the subjective nature of Hendrick's analysis.[5] Cf. Torgerson v. City of Rochester, 643 F.3d 1031, 1049 (8th Cir.) (en banc) ("Where the employer does not rely exclusively on subjective criteria, but also on objective criteria and education, the use of subjective considerations does not give rise to an inference of discrimination."), cert. denied, 132 S. Ct. 513 (2011).  Even assuming Hendrick relied solely on a subjective analysis, this in no way strengthens Hilt's case.  As we have previously explained, "[T]he presence of subjectivity in employment evaluations is itself not a grounds for challenging those evaluations as discriminatory." Evers v. Alliant Techsystems, Inc., 241 F.3d 948, 959 (8th Cir. 2001) (alteration in original) (quotation omitted). Often, "[a] supervisor's assessment of a particular employee's performance is necessarily subjective." Guimaraes, 674 F.3d at 976.

Finally, Hilt argues that even if the district court properly focused on a comparative analysis, because Hilt ranked higher than two other employees not terminated under the RIF, an issue of fact remains as to the RIF's credibility. Hendrick testified that he did not include the two lower ranked employees in the RIF because they were recent hires and he recognized more potential in them.  Hilt has proffered no evidence to dispute Hendrick's explanation on this point.  See Walton v. McDonnell Douglas Corp. 167 F.3d 423, 428 (8th Cir. 1999) (noting that RIF plaintiff must produce affirmative evidence to create a triable issue as to employer's

---

[5]During his deposition, at the instruction of counsel, Hendrick did not answer questions that concerned conversations he had with St. Jude's counsel about the RIF. Hilt complains that St. Jude should not be able to hide the RIF criteria behind the attorney-client privilege and, at the same time, argue that it used objective criteria in the RIF assessment.  We think the record contained sufficient evidence explaining the process and the criteria Hendrick considered in making the RIF assessment.

unsubstantiated testimony). Accordingly, we do not second guess Hendrick's business decision to retain employees with more potential. See Brown v. McDonnell Douglas Corp., 113 F.3d 139, 141-42 (8th Cir. 1997) (recognizing that absent illegality, "we do not weigh the wisdom of any particular employment decision." (quotation omitted)). Therefore, because Hilt has failed to generate a genuine issue of material fact on the pretext issue, the district court properly granted summary judgment.

## III.    CONCLUSION

We affirm the judgment of the district court.

_____