# United States Court of Appeals

## For the Eighth Circuit

_____

No. 14-1284
_____

Lisa Pedersen

*Plaintiff - Appellant*

v.

Bio-Medical Applications of Minnesota, doing business as Fresenius Medical Care

*Defendant - Appellee*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: October 6, 2014
Filed: January 6, 2015

_____

Before RILEY, Chief Judge, WOLLMAN and BYE, Circuit Judges.

_____

BYE, Circuit Judge.

Lisa Pedersen sued Bio-Medical Applications of Minnesota (BMA) under the Minnesota Whistleblower Act (MWA), Minnesota Statute § 181.932, alleging BMA took adverse employment actions against her after she reported the mishandling of

blood samples and a cover-up by management. The district court[1] granted Bio-Medical's motion for summary judgment, concluding Pedersen failed to establish a prima facie case under the MWA. Pedersen appeals, and we affirm.

I

Pedersen began working for BMA, which operates dialysis clinics throughout Minnesota for individuals suffering from end stage renal disease, in 2007. After becoming a registered nurse, Pedersen could assess patients, work with physicians, and administer medication to patients. BMA does not employ its own team of physicians but contracts with physician groups for patient services at its clinics.

Part of BMA's treatment regimen for its patients involves monitoring certain components of patients' blood, which is assessed by drawing and analyzing blood samples from patients, and then administering medications based on the results. BMA draws patients' blood at their facilities and then sends the samples to an independent laboratory, Spectra Laboratories, Inc. (Spectra), for analysis. Spectra provides shipping instructions for the blood samples, including the size of box to use and the number of ice packages to include to keep the blood samples below a certain temperature. On the morning of April 12, 2012, when Pedersen reported to work, she learned a box of blood samples had been left in the clinic's front lobby overnight, packed with ice packages but in the wrong type of shipping box. Another employee, a patient care technician, had discovered the blood samples prior to Pedersen arriving at the clinic, touched the vials to ensure the samples were still cool, repackaged them in the correct package, and sent them to Spectra.

---

[1]The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota.

Because the blood samples had been incorrectly packaged, Pedersen believed the samples may have been compromised. After Spectra processed the samples and returned the results to BMA, however, a registered nurse reviewed the results and determined none of the samples were abnormal. This nurse reported the results to Joelle Ince, the clinic manager, who was responsible for day-to-day operations of the clinic. Ince learned the blood samples had been packaged incorrectly the previous day when she spoke with the patient care technician who originally discovered the blood samples. Pedersen did not make a report about the blood samples to Ince. When Ince became aware of the incident, she notified her area manager, Celestine Kienzle, who had broad oversight responsibilities with respect to staffing issues at the clinics. Kienzle directed Ince to call the laboratory and schedule educational sessions for employees about proper packaging.

On the morning of April 17, 2012, Ince met with Pedersen to discuss concerns Ince had about Pedersen's aggression and some performance issues, including Pedersen failing to "close out the day" on April 12, 2012, leaving one patient without a post-weight assessment; Pedersen entering Ince's office agitated and pointing her finger at Ince, saying with an aggressive posture Ince needed to talk with other staff; Pedersen failing to "sign off" on three medications when another nurse took over for Pedersen; and Pedersen failing to complete patient care plans. Ince informed Pedersen she would be transferred to a separate clinic with a more experienced staff. Pedersen became very upset after hearing this information and yelled at Ince, suggesting she call her area manager.

Later that day, Ince and Pedersen had a meeting with one of BMA's contract nephrologists to discuss patient care planning. While discussing laboratory results, Pedersen informed the nephrologist about the blood samples left in the lobby overnight. Ince then informed the nephrologist a registered nurse at BMA reviewed the results of the blood samples and did not find any abnormalities. According to Pedersen, Ince told Pedersen not to discuss the incident with the nephrologist. After

hearing the information, the nephrologist did not order a redraw of any patients who had incorrectly packaged blood samples.

Following the patient care planning meeting, Pedersen contacted Kienzle to report the incident about the blood samples. Kienzle assured Pedersen they would investigate the incident and if any blood samples needed to be redrawn, then BMA would do so. Pedersen indicated to Kienzle she believed the physicians and the medical director should be notified of the incident. Kienzle responded Pedersen should not tell the physicians about the incident because they would take care of the employee issues at the clinic.

Pedersen also reported the incident to several others, including a customer service representative at Spectra; BMA's employee line; Kelly Tarlton, a BMA regional vice president; and Martha D'Sanchez, a BMA employee relations manager. During these conversations, Pedersen reported not only the incident, but also that she feared retaliation from management as a result of exposing questionable staff practices and a cover-up by management. Both Tarlton and D'Sanchez contacted Kienzle about Pedersen's report. Kienzle informed them they had investigated the incident and none of the blood samples were affected. Pedersen believes the laboratory results were used to administer patient medications without first informing the patients of the incorrectly packaged blood samples.

On April 19, 2012, a patient reported to a patient care technician, who in turn reported to Kienzle, Pedersen had slapped her arm during her previous two treatments. BMA also received complaints Pedersen had impersonated Jennifer Bard, a clinic manager, on April 2, 2012, and on April 18, 2012; she inappropriately documented a patient's treatment and failed to notify the physician as required; and she failed to obtain proper doctor's orders for the treatment of a patient. As BMA investigated these performance issues, Pedersen went on medical leave from April 19, 2012, until May 28, 2012. While Pedersen was on leave, Kienzle asked Bard

-4-

numerous times if there was a way to "get rid of" Pedersen and suggested a number of reasons she could use to justify Pedersen's discharge. On May 29, 2012, Kienzle and Bard met with Pedersen to discuss her performance and their concerns. Pedersen offered explanations for all of the occurrences, but Kienzle suspended Pedersen for three days pending further investigation.

Following BMA's investigation, BMA determined Pedersen could return to work under a corrective action plan, which included requiring Pedersen to refrain from misrepresenting herself, to exhibit respectful and professional behavior, and to appropriately document all actions with patients, obtain orders as required, and communicate with physicans. Pedersen, however, did not return to work. By the end of June 2012, BMA continued to offer Pedersen employment but as a patient care technician rather than a registered nurse due to Pedersen's length of absence and the issuance of new nursing policies and procedures during the absence. Bard indicated to Pedersen, however, she would be retrained to her registered nurse position. Pedersen continued to refuse to return to work unless certain conditions were met by BMA. BMA refused the requests, and after several months of additional discord and Pedersen not returning to work, Tarlton informed Pedersen on September 4, 2012, BMA was terminating Pedersen's employment because it considered her failure to return to work as a voluntary resignation of her employment.

Pedersen then filed suit against BMA in Minnesota state district court, alleging BMA retaliated against her in violation of the MWA for reporting the mishandling of the blood samples and the cover-up of the incident by management. BMA removed the suit to federal court and thereafter filed a motion for summary judgment. The district court granted summary judgment to BMA, finding Pedersen failed to show she engaged in statutorily-protected activity. Pedersen appeals.

## II

"We review a district court's grant of summary judgment de novo, viewing the facts in the light most favorable to the nonmoving party and giving that party the benefit of all reasonable inferences that can be drawn from the record." Johnson v. Wells Fargo Bank, N.A., 744 F.3d 539, 541 (8th Cir. 2014) (internal quotation marks and citation omitted). Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of establishing a lack of genuine issue of fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). However, the nonmoving party "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). "A mere scintilla of evidence is insufficient to defeat summary judgment and if a nonmoving party who has the burden of persuasion at trial does not present sufficient evidence as to any element of the cause of action, then summary judgment is appropriate." Brunsting v. Lutsen Mountains Corp., 601 F.3d 813, 820 (8th Cir. 2010) (internal quotation marks and citations omitted).

The MWA provides "[a]n employer shall not discharge, discipline, threaten, otherwise discriminate against, or penalize an employee" because the employee, in good faith, reported a violation or suspected violation of law to an employer, governmental body, or law enforcement official or reported a situation in which the quality of health care services "violates a standard established by federal or state law or a professionally recognized national clinical or ethical standard and potentially places the public at risk of harm . . . ." Minn. Stat. § 181.932, subd. 1(1), (4) (2007). "Retaliation claims under the MWA . . . may be proven either by direct evidence or, in the absence of such evidence, under the familiar McDonnell-Douglas burden-shifting framework." Wood v. SatCom Mktg., LLC, 705 F.3d 823, 828 (8th Cir. 2013). "'[D]irect evidence is evidence showing a specific link between the alleged

discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action.'" Id. (alteration in original) (quoting Griffith v. City of Des Moines, 387 F.3d 733, 736 (8th Cir. 2004)).

Pedersen argues she presented direct evidence of retaliation, and in support of her contention, she draws attention to statements made by Kienzle. We disagree. The evidence does not show a specific link between Kienzle's comments and BMA's adverse actions. See Griffith, 387 F.3d at 736. Rather, given BMA's decision to return Pedersen to work on a corrective action plan, promises to retrain Pedersen to her previous position with BMA, and Pedersen's continued failure to return to work despite BMA's efforts, we find no evidence in the record to suggest BMA's actions against Pedersen related to anything more than performance and absenteeism issues rather than any comments regarding discharge made by Kienzle months earlier. See Wood, 705 F.3d at 829 ("Termination for repeated failure to perform one's job duties cannot be characterized as direct evidence of a prohibited motive.").

Absent direct evidence of retaliation, Minnesota courts apply the McDonnell Douglas burden-shifting framework to resolve a controversy premised on the MWA. Hilt v. St. Jude Med. S.C., Inc., 687 F.3d 375, 378 (8th Cir. 2012). "Under McDonnell Douglas, the initial burden is on the plaintiff to establish a prima facie case." Buytendorp v. Extendicare Health Servs., Inc., 498 F.3d 826, 834 (8th Cir. 2007). "A prima facie case consists of (1) conduct by the employee that is protected by the Act, (2) an adverse employment action directed at the employee, and (3) a causal connection between the protected conduct and the adverse action." Id. "If the plaintiff establishes a prima facie case, a burden shifts to the employer to articulate a legitimate reason for the adverse action." Id. "The ultimate burden of proof then rests with the plaintiff to prove that the proffered reason is merely a pretext and that retaliatory animus motivated the adverse action." Id.

Here, the district court determined Pedersen failed to establish a prima facie case because her actions were not protected activities. Specifically, the district court found Pedersen's complaints did not amount to reports under the MWA because Ince and Kienzle were already aware of the incident when Pedersen made her complaints. See Erickson v. City of Orr, No. A05-481, 2005 WL 2277395, at *7 (Minn. Ct. App. Sept. 20, 2005) ("[T]he mere mention of a suspected violation that the employer already knows about does not constitute a 'report' under the [MWA]."). In addition, the district court found even if Pedersen's complaints amounted to reports, she failed to demonstrate the reports implicated a violation of any law or ethical standard.

Pedersen contends the district court erred. Citing Kidwell v. Sybaritic, Inc., 749 N.W.2d 855, 869 (Minn. Ct. App. 2008), Pedersen first argues she sufficiently demonstrated her complaints amounted to a report under the MWA because she made additional complaints beyond the incorrect packaging of the blood samples about the cover-up of the mishandling to sources outside of Ince and Kienzle. Pedersen also argues the district court improperly failed to construe the record in the light most favorable to her on a number of factual disputes. She additionally argues the district court erred by finding her reports did not implicate violations of law or ethical standards. In support of her contention, Pedersen argues Ince's and Kienzle's actions were in contravention to multiple authorities, including BMA's internal policies, Centers for Medicare & Medicaid Services (CMS)/End Stage Renal Disease (ESRD) Basic Technical Surveyor Training Regulations, 42 C.F.R. §§ 494.90, 494.70, 494.175(c)(2)(i), and Minnesota Statute §§ 144.4175, 148.261, subdivision (6).

For purposes of this appeal, however, we need not decide whether Pedersen presented sufficient evidence that she engaged in statutorily-protected activity to survive BMA's motion for summary judgment. Even if we were to assume Pedersen established a prima facie case, she failed to provide sufficient evidence to overcome the final step of the McDonnell Douglas analysis, showing pretext. See Wood, 705

F.3d at 827 ("We may affirm a district court's grant of summary judgment on any basis supported by the record." (internal quotation marks and citation omitted)).

"If the plaintiff establishes a prima facie case, the employer then has the burden to articulate a legitimate reason for the adverse action." Hilt, 687 F.3d at 378 (internal quotation marks and citation omitted). "Once the employer has articulated a legitimate reason, the plaintiff shoulders the ultimate burden of establishing a whistleblower violation by demonstrating that the employer's reason is merely a pretext and that retaliatory animus motivated the adverse action." Id. at 378-79 (internal quotation marks and citation omitted). "An employee's attempt to prove pretext requires more substantial evidence than it takes to make a prima facie case because unlike evidence establishing a prima facie case, evidence of pretext and retaliation is viewed in light of the employer's justification." Logan v. Liberty Healthcare Corp., 416 F.3d 877, 881 (8th Cir. 2005) (alterations omitted) (internal quotation marks and citation omitted). Therefore, to prove pretext in a retaliation case, the plaintiff "must both discredit [the] asserted reason for the [adverse action] and show the circumstances permit drawing a reasonable inference that the real reason for [the adverse action] was retaliation." Gilbert v. Des Moines Area Cmty. Coll., 495 F.3d 906, 918 (8th Cir. 2007).

Here, BMA provided legitimate reasons for each of Pedersen's alleged adverse employment actions:[2] (1) Pedersen's suspension – BMA produced evidence it suspended Pedersen pending further investigation because a patient reported Pedersen slapped her; Pedersen impersonated Bard on two separate occasions; Pedersen inappropriately documented a patient's treatment and failed to notify the physician

---

[2]We assume for purposes of our analysis that Pedersen's alleged adverse employment actions constitute actionable adverse actions. See Tademe v. Saint Cloud State Univ., 328 F.3d 982, 992 (8th Cir. 2003) ("An adverse employment action is exhibited by a *material* employment disadvantage, such as a change in salary, benefits, or responsibilities." (internal quotation marks and citation omitted)).

as required; and Pedersen failed to obtain proper doctor's orders for the treatment of a patient, see E.E.O.C. v. Prod. Fabricators, Inc., 763 F.3d 963, 974 (8th Cir. 2014) (finding an employee's poor performance as a nonretaliatory reason for discharge); (2) Pedersen's demotion – BMA produced evidence it asked Pedersen to return to work as a patient care technician rather than as a registered nurse because of Pedersen's lengthy absence, which had been approximately ten weeks up to that point, and because new nursing practices and procedures had been issued during her absence; Bard indicated to Pedersen, however, she would be retrained to her previous position as a registered nurse; and (3) Pedersen's termination – BMA produced evidence it terminated Pedersen's employment because she failed to return to work after an approximately four month absence, see Green v. Franklin Nat'l Bank of Minneapolis, 459 F.3d 903, 916-17 (8th Cir. 2006) (finding the employer had a legitimate reason for terminating the plaintiff's employment because the plaintiff missed work to take classes after the employer denied her permission to take classes due to a severe staffing crunch).

Pedersen contends, however, the reasons offered are pretextual because BMA ostensibly disciplined Pedersen for events occurring prior to her lodging her complaints for which BMA did not originally discipline her. Pedersen argues BMA used these events as a means to justify her termination when BMA's true intention was discriminatory and contends this evidence is enough to raise a genuine doubt as to the legitimacy of BMA's motive. Relying on McAdams v. Chertoff, No. Civ. 04108, 2005 WL 1630525, at *5 (D. Minn. July 11, 2005), Pedersen further contends BMA either willfully exaggerated her deficiencies or carelessly characterized them as inaccurate.

After reviewing the record, we cannot conclude Pedersen has raised an issue of material fact that BMA's reasons for her suspension, demotion, and termination were pretextual. Pedersen fails to offer any evidence disputing BMA's explanations for events which occurred after Pedersen first made her complaints or for events of

which BMA did not become aware until after Pedersen first made her complaints. Further, BMA offered Pedersen the opportunity to return to BMA for several months. Although after Pedersen had been absent for approximately ten weeks, BMA offered Pedersen a patient care technician position, BMA offered its reasons for doing such and indicated it would retrain Pedersen to a registered nurse position. BMA also offered evidence Ince met with Pedersen prior to Pedersen making any report and told Pedersen she was suffering from performance issues at her registered nurse position and needed to work with a more experienced staff. Pedersen has done nothing to dispute these explanations. Pedersen has further failed to dispute BMA's explanation for finding she voluntarily resigned from her position after failing to return to work. Pedersen's speculation about an ulterior motive by BMA is unsupported and contradicted by other undisputed facts in the record. Accordingly, we will not second-guess BMA's business decisions to suspend, demote and then terminate Pedersen because of her performance, absence and refusal to return to work. See Brown v. McDonnell Douglas Corp., 113 F.3d 139, 141-42 (8th Cir. 1997) (recognizing that absent illegality, "we do not weigh the wisdom of any particular employment decision" (internal quotation marks and citation omitted)). Because Pedersen has failed to generate a genuine issue of material fact on the pretext issue, the district court properly granted summary judgment.

## III

For the foregoing reasons, we affirm the judgment of the district court.

_____

-11-