# United States Court of Appeals
### For the Eighth Circuit

_____

No. 12-1712
_____

Jenna K. Wood

*Plaintiff - Appellant*

v.

SatCom Marketing, LLC; Kimberly M. Roden

*Defendants - Appellees*
_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis
_____

Submitted: October 18, 2012
Filed: February 13, 2013
_____

Before MURPHY, BYE, and SHEPHERD, Circuit Judges.
_____

BYE, Circuit Judge.

Jenna Wood sued her former employer SatCom Marketing, LLC ("SatCom") alleging violations of the Minnesota Whistleblower Act, Minnesota Human Rights Act, common law of wrongful termination, and Fair Labor Standards Act. Finding Wood had failed to establish a prima facie case of retaliation under each statute and

the common law, the district court[1] granted summary judgment in favor of SatCom. We affirm.

I

SatCom hired Wood as a part-time Verifier in 2008. It promoted her to Human Resources Clerk in 2008 and then to Human Resources Assistant in 2009. Throughout the period relevant to this case, SatCom's Human Resources Department consisted only of Wood and her supervisor Sam Riemensnider. As Human Resources Assistant, Wood performed ordinary administrative and personnel-oriented tasks, in addition to conducting occasional, basic legal research for SatCom (whose legal work was predominantly handled by outside counsel). Wood, who had received some training as a paralegal but did not complete the certification, had previously researched issues for SatCom relating to the FMLA, retaliation claims, employee monitoring, compensation for unauthorized breaks, and termination for insubordination.

In November 2009, SatCom's primary client announced its intention to conduct a compliance review of all vendors. Because SatCom relied heavily on this client's business, SatCom hired Kimberly Roden as Vice President of Operations to oversee preparations for the review. During the same time period, SatCom sought self-regulated organization certification, which it describes as the "Good Housekeeping Seal of Approval for telemarketing companies." Both processes depended in part upon SatCom's satisfactory maintenance of personnel documents, for which Wood was responsible. When asked in December 2009, Wood told SatCom's management that the files were in order. SatCom discovered later that Wood's statement was inaccurate; the personnel documents were, in fact, unorganized and out of date. As

---

[1]The Honorable Ann D. Montgomery, United States District Judge for the District of Minnesota.

a result, SatCom's management decided to manage the Human Resources Department more closely. It imposed daily filing mandates on Wood and initiated a search for her supervisor Riemensnider's replacement.

On March 1, 2010, Roden held a meeting to discuss SatCom's new direct deposit policy. At the meeting, Wood raised concerns that requiring direct deposit as a condition of employment might be illegal. Roden stated that she would look into the matter and referred it to SatCom's legal team. That night, Wood conducted independent research on the issue at home.

On March 2, 2010, Roden advised Wood that some clients and representatives would be visiting SatCom the following week and Wood should, therefore, devote time to cleaning her office and ensuring the files were attended to. Later that day, Roden discovered Wood printing a copy of the Employer's Guide (which she had requested from the Employers Association during her private investigation of the direct deposit policy the night before) on one of SatCom's printers. Roden confronted Wood regarding her "wasting . . . company time and resources" and asked her, "Can you let this go? This is already handled." Roden then met with Riemensnider to discuss Wood's pursuit of unassigned legal work at the expense of her job duties. Roden informed Riemensnider that Wood would be required to submit an hourly work summary each day to "make sure that she was doing the work that was assigned" and to "get[] caught up on [] projects—especially, employee files."

On March 3, 2010, Wood was directed to prepare certain personnel data for new hires. She failed to do so. In an email to Riemensnider, Roden identified this as the second example of Wood "not performing her job." By the following day, Wood still had not completed the data entry, and the portion she had completed contained errors. Ultimately, SatCom had to enlist Heidi Schlict, an employee from another department, to finish Wood's assignment. Wood and Schlict later exchanged words in SatCom's lobby regarding the data entry. Wood maintains the exchange was not an argument

-3-

but rather a discussion. Nevertheless, Roden interrupted the exchange and reprimanded both parties for carrying out their discussion inappropriately in a public setting. Schlict apologized for the exchange. Wood did not apologize and was written up for the incident.

Also on March 4, 2010, Wood brought up the direct deposit policy again—this time to Paul Mattson, a mid-level supervisor at SatCom. Mattson relayed Wood's concerns to SatCom's President, Dale Wunderlich, who stated he had already checked with legal counsel about the matter and determined the policy was lawful.

On March 5, 2010, Wood did not submit her required work summary. She also arrived at work late that day. SatCom found during discovery that Wood was late because she had spent the morning interviewing attorneys. That afternoon, Riemensnider and Roden placed Wood on a one-week unpaid suspension for failure to complete assigned tasks, use of company time and resources on unauthorized projects, and defiance of a lawful directive from management. In an emailed response, Wood stated in part, "The HR assistant job description . . . was outdated to my actual work and capabilities. My intellectual capabilities, supersided [sic] the monotny [sic] of paperwork the position entailed, but I still performed it very well, up until the starting week of 03/01."

SatCom offered Wood the choice of returning to work provisionally on March 15 or accepting a severance package in exchange for her resignation. Wood chose to return to work. In an email to SatCom, she stated that the pay offered in the severance package was too low, noting, "In an era with lawsuits, an adequate and reasonable severance package to an employee has benefited and possible [sic] saved the existence of many business [sic]." Wood also warned Riemensnider that her suspension was "a risky violation of FLSA" and that the "legal damages would cost more than suspending [her] for a whole year."

-4-

On March 15, 2010, Wood returned to work at SatCom and was placed on an action plan which outlined the terms of a thirty-day probationary period. Under the new plan, Wood reported directly to Roden rather than Riemensnider and was required to submit a daily work plan and end-of-day summary to Roden, comply with management directives in a professional manner, present all correspondence to Roden prior to sending, and direct any complaints to Roden or, if the complaint involved Roden, to Wunderlich or Brenda Kroska. Failure to abide by these terms during the probationary period would result in Wood's immediate termination. Roden directed Wood to bring an executed copy of the action plan to work the next day.

On March 16, 2010, Wood arrived at work without the executed copy of the plan, so Roden sent her home to retrieve it. Roden also informed Wood that because the filing was behind, it would be her only job until further notice and that she was not to speak with co-workers in the meantime. Roden also prohibited Wood from using her personal cell phone at work, disabled her access to the company email system, and denied her access to the keys for personnel files. Wood further avers she was prohibited from drinking tea at her desk, that her work phone and work computer were removed from her desk, that she was required to walk with an escort at work, and that Roden escorted her to the restroom. The afternoon of March 16, Wood ran into a supervisor while exiting the lobby. Wood, who was carrying a plant, remarked that she was removing her plant from the "hostile environment." The supervisor reported the incident to Roden.

On March 19, 2010, Wood arrived early for her shift and delivered a letter to Riemensnider detailing all of SatCom's activities Wood considered to be illegal. The letter alleged that SatCom was violating the law through its direct deposit policy, workplace practices that Wood believed disparately impacted racial minorities, its handling of non-exempt employee time records, and its deduction of sales commissions for missed work. The letter further stated that Wood did "not want to break the law" and expressed her desire "not be treated adversely, and put into a

situation of enforcing the 'direct deposit' policy or any other illegal policy at SatCom." Riemensnider warned Wood that her complaining to him rather than to Roden constituted a violation of her action plan. Wood acknowledged that she could be terminated for her actions. Riemensnider forwarded Wood's letter to Roden, who called a meeting within an hour.

At the meeting, Roden handed Wood a letter asking her to circle "yes" or "no" if she had told a supervisor, "I don't want my plant to be in a hostile environment." Wood wrote that she hadn't made that specific statement but did believe SatCom to be a hostile working environment. Roden then handed Wood a second letter which asked her to circle "yes" or "no" if she had delivered a complaint to Riemensnider that morning. Wood circled "yes." Roden then terminated Wood for violating the action plan. Wood replied, "I was hoping you would terminate me."

Wood filed suit against SatCom and Roden on March 1, 2011, in the District of Minnesota, alleging she had been subjected to unlawful retaliation in violation of the Minnesota Whistleblower Act ("MWA"), Minnesota Human Rights Act ("MHRA"), common law of wrongful termination, and Fair Labor Standards Act ("FLSA"). On February 22, 2012, the district court granted summary judgment in favor of SatCom and Roden. It determined Wood had failed to establish a retaliation claim and that, in any event, SatCom and Wood had presented a legitimate, non-discriminatory basis for Wood's termination. In so doing, the district court also mooted Wood's motion to amend her complaint to add a claim for punitive damages. This appeal followed.

II

"We may affirm a district court's grant of summary judgment on any basis supported by the record." Menz v. New Holland N. Am., Inc., 507 F.3d 1107, 1110

(8th Cir. 2007). "We review a district court's decision to grant a motion for summary judgment de novo, applying the same standards for summary judgment as the district court." Tusing v. Des Moines Indep. Cmty. Sch. Dist., 639 F.3d 507, 514 (8th Cir. 2011). We have recently described the appropriate standard in considering summary judgment motions, including employment discrimination cases, as follows:

> Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. . . . On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts. . . . The nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.

Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (internal quotation marks and citation omitted). To clarify, "[a]lthough the burden of demonstrating the absence of any genuine issue of material fact rests on the movant, a nonmovant may not rest upon mere denials or allegations, but must instead set forth specific facts sufficient to raise a genuine issue for trial." Wingate v. Gage Cnty. Sch. Dist., No. 34, 528 F.3d 1074, 1078–79 (8th Cir. 2008). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

A.    Wood's Retaliation Claims

Retaliation claims under the MWA, MHRA, common law, and FLSA may be proven either by direct evidence or, in the absence of such evidence, under the

familiar <u>McDonnell-Douglas</u> burden-shifting framework. <u>See</u> <u>McGrath v. TCF Bank Sav., FSB</u>, 502 N.W.2d 801, 805 (Minn. Ct. App. 1993) (MWA); <u>Hubbard v. United Press Int'l, Inc.</u>, 330 N.W.2d 428, 441, 444 (Minn. 1983) (MHRA); <u>Phipps v. Clark Oil & Refining Corp.</u>, 408 N.W.2d 569, 572 (Minn. 1987) (applying <u>McDonnell-Douglas</u> equivalent to common-law claim); <u>Grey v. City of Oak Grove</u>, 396 F.3d 1031, 1034–35 (8th Cir. 2005) (FLSA). "[D]irect evidence is evidence showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action." <u>Griffith v. City of Des Moines</u>, 387 F.3d 733, 736 (8th Cir. 2004) (internal quotation marks and citation omitted). "[A] plaintiff may prove a claim under the direct-evidence framework—perhaps more appropriately understood as the direct method—through either direct or circumstantial evidence, or a combination of the two." <u>Friend v. Gopher Co.</u>, 771 N.W.2d 33, 40 (Minn. Ct. App. 2009).

Wood first argues the district court erred in concluding she failed to provide direct evidence of retaliation. In support of this contention, she draws attention to various statements made by Mattson, Riemensnider, and Roden establishing a link between her complaints and SatCom's actions against her. Wood's argument misses the mark. There is no doubt that Wood's complaints were linked to SatCom's actions or that termination constitutes an adverse employment action. What Wood fails to demonstrate is any link between the substance of her complaints and those adverse actions—i.e., anything that would reveal a "discriminatory animus." <u>See</u> <u>Griffith</u>, 387 F.3d at 736. We find no evidence in the record to suggest SatCom's actions against Wood related to anything more than the fact that she persisted in pursuing a legal issue—one that had already been referred to and resolved by SatCom's legal team—at the expense of her own assigned work. Termination for repeated failure to perform one's job duties cannot be characterized as direct evidence of a prohibited motive.

Absent direct evidence of retaliation, the district court analyzed Wood's claims under the McDonnell-Douglas burden-shifting framework. At the first step of the framework, a plaintiff must establish a prima facie case of retaliation by showing (1) she engaged in protected conduct, (2) she was subjected to an adverse employment action, and (3) there was a causal connection between the protected conduct and the adverse action. Lewis v. Heartland Inns of Am., LLC, 591 F.3d 1033, 1042 (8th Cir. 2010) (internal citation omitted). If the plaintiff succeeds, the burden shifts to the employer to articulate a legitimate, non-retaliatory reason for the action. Grey, 396 F.3d at 1035. If the defendant does so, the plaintiff may still prevail in the final step of the McDonnell-Douglas analysis by proving, by a preponderance of the evidence, that "the legitimate, nonretaliatory reasons articulated by [her employer] were not the true reasons for discharge, but merely a pretext for retaliation." Id.

Here, the district court concluded Wood had failed to establish a prima facie case of retaliation because her actions were not protected activities. Specifically, the district court found Wood's actions either (a) fell within her normal job description or (b) were not intended in good faith to expose an illegality. See Kidwell v. Sybaritic, Inc., 784 N.W.2d 220, 228 (Minn. 2010) ("An employee cannot be said to have 'blown the whistle' when the employee's report is made because it is the employee's job to investigate and report wrongdoing."); Obst v. Microtron, Inc., 614 N.W.2d 196, 202 (Minn. 2000) (holding an activity can only be protected as whistle-blowing if made in good faith to expose an illegality).

We agree that the good-faith requirement withdraws protection over Wood's March 19 complaint. Even viewed in the light most favorable to Wood (i.e., assuming, despite evidence to the contrary, that the complaint was not prepared with the express purpose of building a retaliation claim), the March 19 complaint cannot be construed as a good faith attempt to expose an illegality. Throughout the month of March, Wood raised her concerns repeatedly in various fora and to numerous parties. At some point, we must simply declare the whistle blown. See Hitchcock v.

FedEx Ground Package Sys., Inc., 442 F.3d 1104, 1106 (8th Cir. 2006) (finding "no whistle to blow" when employer had already been made aware of alleged illegalities).

With respect to the remaining incidents, we disagree with the district court's conclusion that because legal research fell within Wood's occasional job duties, they were not protected activities. It is illogical to argue on the one hand that legal research was part of Wood's job and, on the other, that Wood was terminated for performing legal research because it was beyond her job description. We do find, however, that the March 1 incident cannot fall within the purview of a retaliation claim because SatCom took no adverse action against Wood for having voiced a concern at the meeting. See Lewis, 591 F.3d at 1042 (recognizing adverse action as the second element of a prima facie case of retaliation). On the contrary—Roden referred Wood's concerns to SatCom's legal department and informed Wood that the matter would be handled. We, therefore, conclude the March 1 report constituted a protected activity, but one that cannot support a retaliation claim.

With respect to the March 2 printer incident, the district court determined Wood's actions could not have been intended to expose an illegality because she did not expect to meet Roden at the printer that afternoon. Once again, we must disagree with the district court's reasoning. It is difficult to conceive of a purpose for Wood's printing the document at work other than to present it to SatCom in furtherance of her argument regarding the direct deposit policy. Accordingly, viewing the evidence in the light most favorable to Wood, this incident should also be regarded as protected activity. Because Wood was reprimanded and prospectively required to submit a daily work summary as a result of this incident, we find this activity does support a prima facie case of retaliation. See id.

With respect to Wood's March 4 complaint to Mattson, the district court concluded "the facts are unclear as to whether Wood was engaging in protected activity" because Mattson, as a mere mid-level supervisor, was not in a position to

change the policy in question. The district court also noted SatCom had already been made aware of Wood's complaints at this point, suggesting her report to Mattson was not made in good faith to expose illegality. On appeal, Wood argues the MWA protects reports made "to an employer," language which should be interpreted to include even reports made to mid-level supervisors. See Minn. Stat. § 181.932, subd. 1(1). While the assumption of Wood's good faith weakens with each passing report (given her knowledge that SatCom was, by now, quite familiar with her concerns), the evidence viewed in Wood's favor tips slightly in favor of construing the March 4 report as protected activity and thus a valid basis for a prima facie case of retaliation.

Accordingly, we find that at least three of Wood's reports were made in good faith to expose suspected illegality and were, therefore, protected activities for the purposes of establishing a retaliation claim.[2] Because the second and third prongs of the prima facie case—proving the existence of an adverse action and causation—are not disputed with respect to the March 2 and March 4 complaints, Wood has succeeded in establishing a prima facie case of retaliation. Nevertheless, we affirm the district court's grant of summary judgment in favor of SatCom on the basis of the next step in the McDonnell-Douglas analysis: SatCom's legitimate, non-retaliatory reason for terminating Wood.

During the time period relevant to this case, SatCom was preparing for two important reviews, both of which relied in part on its satisfactory maintenance and organization of personnel files. As one of only two HR representatives—and the sole employee charged with the task of organizing these files—Wood's fulfillment of her assigned tasks was imperative to the company's successful completion of those

---

[2]Wood also argues the district court erred in concluding her actions did not constitute protected activities under the common law, MHRA, and FLSA because those statutes and caselaw define protected activity differently from the MWA. Because we conclude that most of Wood's actions were protected activities under each theory, this issue is moot.

reviews. On March 1, Wood first raised her concern regarding SatCom's direct deposit policy and was told the matter would be directed to SatCom's legal team. The next day, Roden instructed Wood to devote time to cleaning her office and ensuring the files were attended to because clients and representatives would be visiting SatCom the following week. Instead, Roden discovered Wood at the printer that same afternoon, dedicating company time to a legal search she knew had already been referred to outside counsel. Under the circumstances, Roden's reprimand of Wood for wasting company time and resources rather than completing her assigned tasks was reasonable, especially in light of Wood's prior misrepresentation to the company about the state of the personnel files.

On March 4, Wood raised the matter again to yet another supervisor. That same day, however, Wood so severely neglected a data entry assignment that Roden had to enlist an employee from a different department to complete it. The following day, Wood arrived to work late and failed to submit the hour-by-hour work schedule she was required to complete each day. Given Wood's repeated failures to perform her job duties and disregard for explicit directives, SatCom had ample legitimate reasons to suspend Wood at this juncture. Furthermore, the fact that SatCom offered Wood a severance package during her suspension suggests it was ready to end their working relationship well before Wood submitted her March 19 letter.

When Wood returned to work, the company put her on an action plan. Although the plan may have been somewhat severe, there is no evidence to suggest it was intended to accomplish anything but to keep Wood on task. On Wood's first day back at work, she arrived without the executed action plan, demonstrating her continued disregard for direction. The action plan, signed by Wood, stated that any violation would result in her immediate termination. Wood then committed two violations of her action plan (telling a supervisor that her plant was in a "hostile working environment" and delivering the March 19 letter to Riemensnider), after which she was terminated. SatCom has met its burden of demonstrating a legitimate,

-12-

non-retaliatory reason for terminating Wood, and Wood has failed to provide evidence to suggest the proffered reason was pretextual. Accordingly, we affirm the district court's order granting summary judgment in favor of SatCom on Wood's retaliation claims.

B.     The MWA's "Opposition Clause"

Wood next argues that the district court erred in failing to address her separate cause of action under the MWA's Opposition Clause. In her complaint, Wood alleged two violations under the MWA: one under the Reporting Clause and a second under the Opposition Clause. Unlike the Reporting Clause, which prohibits retaliation against an employee who reports suspected illegality, the Opposition Clause prohibits retaliation against an employee who refuses to perform what she reasonably believes is an illegal act. See Minn. Stat. § 181.932, sub. 1(3). A retaliation claim brought under the Opposition Clause is a distinct claim. See Fjelsta v. Zogg Dermatology, PLC, 488 F.3d 804, 909 (8th Cir. 2007). It is also, however, analyzed under the McDonnell-Douglas framework. See Buytendorp v. Extendicare Health Servs., Inc., 498 F.3d 826, 834 (8th Cir. 2007) ("We analyze Minnesota whistleblower claims using the procedural framework of McDonnell Douglas."). Because the district court's McDonnell-Douglas analysis was sufficiently thorough to encompass Wood's claims under both the Reporting Clause and the Opposition Clause, Wood is not entitled to reversal on this basis.

We, therefore, affirm the district court's grant of summary judgment in favor of SatCom.

_____

-13-