# United States Court of Appeals
### For the Eighth Circuit

_____

No. 17-1560

_____

Isis Naguib

*Plaintiff - Appellant*

v.

Trimark Hotel Corporation, a Texas corporation; M&C Hotel Interest Inc., a
Delaware corporation, doing business as Millennium Hotel & Resorts

*Defendants - Appellees*

------------------------------

Employee Lawyers Association of the Upper Midwest

*Amicus on Behalf of Appellant(s)*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: February 14, 2018
Filed: September 11, 2018

_____

Before SMITH, Chief Judge, MURPHY and COLLOTON, Circuit Judges.[*]

_____

_____

[*]Chief Judge Smith and Judge Colloton file this opinion pursuant to 8th Cir.
Rule 47E.

SMITH, Chief Judge.

Isis Naguib was fired from her job as Executive Housekeeper at Millennium Hotel ("Millennium") in Minneapolis, a Trimark Hotel Corporation ("Trimark") property, after an internal wage and hour investigation revealed that the housekeeping department had been rounding employee hours down. The hotel claims Naguib instituted the practice and benefitted from it because she received an annual bonus for decreasing payroll costs. Naguib contends that she was fired because of her age, as retaliation for her truthful deposition testimony in previous litigation, for taking protected leave, and for opposing discriminatory practices. The district court[1] granted summary judgment to Trimark on all counts because it found that Millennium had legitimate, non-discriminatory reasons for its adverse employment action. Naguib appeals, and we affirm.

## I. *Background*

Naguib ran the housekeeping department at Millennium from 1977 until she was fired in 2014. In that role she oversaw roughly 50 housekeepers and managed payroll for the department. Housekeepers at Millennium typically worked eight-hour shifts. Any time worked in excess of eight hours qualified as overtime, during which employees were entitled to a higher wage rate. Millennium tracked its employee hours using a punch clock system. However, Naguib also required housekeepers to handwrite their hours on a sign-in sheet. Some housekeepers would later report that Naguib had told them they were not allowed to list any overtime hours on the handwritten sheet; they were directed to write in eight-hour shifts rather than the same hours reflected in the punch clock system. Naguib then manually overrode punch clock times and entered the shifts reflected on the handwritten sheets. Naguib's

---

[1]The Honorable Joan N. Ericksen, United States District Judge for the District of Minnesota.

contract with Millennium included an annual one percent bonus tied to minimizing employee payroll.

Naguib's discrimination and retaliation claims are based on a series of incidents that occurred over roughly three years. First, she testified in a 2011 deposition that Millennium used the "Freeman" cleaning standard despite being told by Millennium's General Manager, Robert Rivers, that the hotel did *not* use that standard, which she considered to be untruthful. Millennium ended up settling that lawsuit for $20 million. It is unclear if Naguib's testimony played any role in that settlement, but Naguib claims it is one reason that she was eventually fired. Second, in April 2013 Rivers sent an e-mail to his replacement, new General Manager Katie Neufeld, asking whether she was "taking control" of Naguib. J.A. at 105. Third, in June 2014 Neufeld said to Naguib, "you'll probably never retire, we'll be carrying you out . . . in a box." *Id.* at 83. Fourth, Neufeld allegedly asked Naguib to tell her Muslim employees to get notes from their mosques saying they could wear head scarves to work. Neufeld denies this ever happened, and company policy accommodated religious attire at all times.

Fifth, Naguib had consistently been allowed to roll over her vacation hours from one year to another throughout her tenure at Millennium despite a hotel policy to the contrary. On June 4, 2014, Naguib requested to carry roughly 80 hours past her July 1 deadline. Millennium told Naguib that she could use the hours before December 31 of that year. After Naguib declined to select vacation days to use her hours, Millennium assigned her days off starting on October 21. She claims this was retaliation for a separate discrimination complaint filed by her son Omar, a hotel employee. Finally, on October 30, 2014, Naguib requested Family and Medical Leave Act (FMLA) leave due to hypertension. Millennium granted the request but suspended and fired her shortly thereafter.

Naguib claims that any or all of these incidents led to her firing or indicate an animus that motivated her firing. Millennium tells a different story. During Naguib's mandatory vacation days and subsequent FMLA leave in October 2014, David Simmons filled in as head of housekeeping at Millennium. He personally observed timekeeping irregularities and flagged them for management. For example, he observed that housekeepers routinely punched out after their scheduled work hours and then wrote in a lower hour total on their sign-in sheet. When Simmons asked them about this practice, they told him that Naguib had told them they were not allowed to list overtime hours. Millennium investigated the wage and hour issue with housekeeping and throughout the rest of the hotel. During the investigation, multiple employees reported that Naguib had told them not to list overtime hours. The investigation also revealed that housekeeping had by far the most punch time edits of any Millennium department. Naguib claims that management essentially condoned that practice for years. Simmons also discovered that one housekeeping employee was regularly sewing hotel linens at home after eight-hour workdays and not receiving overtime pay.

On November 7, 2014, the day Naguib returned from FMLA leave, Millennium suspended her pending completion of its investigation. Millennium fired Naguib on November 19 as a result of its investigation. Millennium disciplined three other managers for timekeeping edits but did not fire anyone else. The hotel then compensated its employees for the unpaid overtime hours.

Naguib sued Millennium, claiming the hotel discriminated against her because of her age and retaliated against her because of her deposition testimony, because she opposed discrimination, and because she took protected leave. The district court granted summary judgment in Millennium's favor on all counts, concluding that Millennium had a legitimate, non-retaliatory or discriminatory reason for firing Naguib that was not pretextual. Naguib appeals.

-4-

## II. *Discussion*

"[W]e review a district court's grant of summary judgment de novo, viewing the evidence in the light most favorable to the nonmoving party." *Brunsting v. Lutsen Mountains Corp.*, 601 F.3d 813, 820 (8th Cir. 2010) (citation omitted). We will affirm if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Naguib brought two claims for retaliation based on her refusal to testify that Millennium did not follow the Freeman cleaning standards in a 2011 deposition: one under the Minnesota Whistleblower Act (MWA) and one under the common law. On both claims, Minnesota employers are prohibited from punishing employees for "refus[ing] an employer's order to perform an action that the employee has an objective basis in fact to believe violates any . . . law or rule or regulation" if the employee informs the employer that the order is being refused for that reason. Minn. Stat. § 181.932, subd. 1(3); *see also Phipps v. Clark Oil & Ref. Corp.*, 408 N.W.2d 569, 571 (Minn. 1987) (agreeing that "common law . . . protects those fired for their refusal to violate the law" (citations omitted)). Naguib also brought two retaliation claims based upon her opposition to discrimination under the Minnesota Human Rights Act (MHRA). The MHRA forbids employers from retaliating when an employee opposes a practice forbidden by the MHRA. Minn Stat. § 363A.15. The MHRA generally prohibits discrimination based upon, among other things, race, sex, age, and disability. *Id.* at § 363A.08.

In our circuit, these retaliation claims may be proved by either direct evidence or under the *McDonnell-Douglas* burden-shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Wood v. SatCom Mktg., LLC*, 705 F.3d 823, 828 (8th Cir. 2013). Direct evidence shows a "specific link" between the alleged animus and the termination sufficient to support a substantially strong inference that the employer acted based upon that animus. *See Wagner v. Gallup, Inc.*, 788 F.3d 877, 884–85 (8th Cir. 2015). "Direct evidence does not include statements by

decisionmakers that are facially and contextually neutral." *Torgersen v. City of Rochester*, 643 F.3d 1031, 1045 (8th Cir. 2011) (citation omitted). To establish a prima facie retaliation claim under *McDonnell Douglas*, a plaintiff must show "(1) she engaged in protected conduct, (2) she was subjected to an adverse employment action, and (3) there was a causal connection between the protected conduct and the adverse action." *Wood*, 705 F.3d at 829 (citation omitted). If the plaintiff establishes a prima facie case, "the burden shifts to the employer to articulate a legitimate, non-retaliatory reason for the action." *Id.* (citation omitted). If the employer does so, the burden shifts back to the plaintiff to demonstrate that the stated reason is pretextual. *Id.* "[T]o prove pretext in a retaliation case, the plaintiff 'must both discredit [the] asserted reason for the [adverse action] and show the circumstances permit drawing a reasonable inference that the real reason for [the adverse action] was retaliation.'" *Pedersen v. Bio-Med. Applications of Minn.*, 775 F.3d 1049, 1055 (8th Cir. 2015) (second, third, and fourth alterations in original) (citation omitted).

Naguib has failed to provide direct evidence that she was retaliated against because of her deposition testimony. The deposition took place in 2011, and Naguib was fired three years later. The general manager who disagreed with her at the time was no longer her boss at the time she was fired. There is no more than a speculative connection between the two events. Naguib has also failed to present direct evidence that she was retaliated against for opposing a practice forbidden by the MHRA. Her allegation that Neufeld asked her to obtain notes from Muslim employees so that they would be allowed to wear head scarves is the only alleged conduct that implicates the MHRA, and the facts show that the company never instituted that policy, the company policy allowed for religious attire, and, rather than refusing to carry out Neufeld's alleged request, Naguib merely responded by saying she would not ask for notes until a company policy was officially rolled out. This does not amount to a "specific link" sufficient to support a strong inference that Naguib's firing, which occurred months later, was motivated by her opposition to this hypothetical and unenforced policy. *See Wagner*, 788 F.3d at 884–85.

-6-

Without direct evidence, Naguib's retaliation claims must proceed under the *McDonnell-Douglas* burden-shifting framework. Even assuming Naguib can establish a prima facie case of retaliation under that standard, Millennium has clearly shown a legitimate non-discriminatory or retaliatory reason for firing her. Millennium's internal investigation credibly exposed that Naguib regularly altered employee hours without using a company-sanctioned form.

The timing of Naguib's termination supports the notion that it was not retaliatory. Only when she took vacation in October 2014 did someone else fill her role, allowing Millennium to discover the time sheet practice Naguib oversaw and the home sewing conducted by one employee. Within one month, and after a hotel-wide internal wage and hour investigation, Millennium fired Naguib. The investigation that resulted in Naguib's termination also resulted in discipline for three other managers at Millennium who engaged in similar conduct on a smaller scale. Millennium then compensated its employees for unpaid overtime discovered in the investigation. Naguib has not met her burden to demonstrate that Millennium's stated reasons for firing her were pretextual because she has not discredited Millennium's version of events. *See Pedersen*, 775 F.3d at 1055. We therefore conclude that the district court did not err by granting summary judgment on Naguib's retaliation claims under the MWA, MHRA, and common law.

Naguib also appeals the district court's decision to grant summary judgment to Millennium on her age discrimination claim under the MHRA. The MHRA forbids an employer from firing or discriminating against an employee because of his or her age. Minn Stat. § 363A.08, subd. 2. Discrimination claims under the MHRA may be proved by either direct evidence or under the *McDonnell-Douglas* burden-shifting framework. *See Wood*, 705 F.3d at 828.

Again, Naguib has not shown a specific link between any age discrimination and her termination sufficient to support the inference that the discrimination was the cause of her termination. *See Wagner*, 788 F.3d at 884–85. She points only to a stray remark from Neufeld that occurred months before the termination process. Naguib's termination followed the wage and hour investigation. Without sufficient direct evidence, we review Naguib's discrimination claim under *McDonnell Douglas*. Because Naguib has not demonstrated pretext sufficient to overcome Millennium's aforementioned legitimate, non-discriminatory or non-retaliatory reason for firing her, this claim must also fail.

Finally, Naguib appeals the district court's decision to grant summary judgment to Millennium on her FMLA retaliation claim. Under the FMLA, an employer may not interfere with the use of FMLA leave, including by retaliating for the use of leave. 29 U.S.C. § 2615(a)(1). This claim is also reviewed for direct evidence or under *McDonnell Douglas*. *See, e.g.*, *Massey-Diaz v. Univ. of Iowa Cmty. Med. Servs., Inc.*, 826 F.3d 1149, 1160 (8th Cir. 2016).

Naguib has not provided any direct evidence that she was fired because she took FMLA protected leave. She applied for FMLA leave beginning on October 30, 2014, one day after her temporary replacement flagged wage and hour irregularities that would eventually lead to the investigation and Naguib's termination. The results of that investigation further support the district court's conclusion that Naguib was fired for legitimate, non-discriminatory or retaliatory reasons. Because Naguib cannot demonstrate pretext under *McDonnell Douglas*, the district court did not err in granting summary judgment on her FMLA claim either.

### III. *Conclusion*

Accordingly, the judgment of the district court is affirmed.

_____